PEGGY LAWTON KITCHENS, INC. *vs.* TERENCE M. HOGAN & others.[1]

July 25, 1984. *Trade Secret. Injunction. Consumer Protection Act*, Trade secret.

Nothing is sacred.[2] We have before us a case of theft of a recipe for baking chocolate chip cookies. The issue is whether the plaintiff, Peggy Lawton Kitchens, Inc. (Kitchens), possessed a protected trade secret.

A Superior Court judge found that Kitchens first added chocolate chip cookies to its line of prepackaged bakery products in 1960. They were an

---

[1] Ruth A. Hogan and Hogie Bear Snacks, Inc.

[2] See *United States* v. *Byrnes*, 644 F.2d 107, 108-109 (2d Cir. 1981).

indifferent success. In 1963, Lawton Wolf, a principal officer of Kitchens, mixed the chaff from walnuts ("nut dust" he called it) in his chocolate chip cookie batter. This, as the judge found, "produced a distinctive flavor. It was an immediate commercial success." Lawton Wolf, in his testimony, described what nut dust did for his cookies in rhapsodic terms: "Miraculous." Sales, he said "took off immediately. It did to the cookies what butter does to popcorn or salt to a pretzel. It really made the flavor sing."

The judge found that, from the beginning of its use, Kitchens carefully guarded the cookie recipe. One copy of the recipe was locked in an office safe. A duplicate was secured in the desk of William Wolf, Lawton's son. To satisfied customers who asked for the recipe, Kitchens wrote that the formula was a trade secret. For work day use, Kitchens broke down the formula into baking ingredients, small ingredients (e.g., the nut dust), and bulk ingredients. The three components were kept on separate cards which contained gross weights. Even though those cards concealed the true proportions of the ingredients, access to the cards was limited to long-time trusted employees. The defendant Terence Hogan, whose responsibilities at Kitchens were plant and equipment maintenance and safety, was not among those entrusted with the ingredients cards. Hogan, the judge found, had gained access to the cards through a pretext, and after Hogan left Kitchens' employ, a master key, which could open the vault and the office in which William Wolf's desk was located, was found in Hogan's desk.

Hogan and his wife organized a bakery business to sell prepackaged bakery products under the trade name Hogie Bear. Among the first products Hogie Bear made was a chocolate chip cookie. It had the same recipe, including the miraculous nut dust. The judge found that about forty brands of chocolate chip cookies were sold in New England. Except for those made by Kitchens and Hogie Bear, no two are alike. The judge found Hogie Bear's cookie "similar in appearance, color, cell construction, texture, flavor and taste.[3] They are 'formulated' in a similar fashion. They are the same."

As to damages, the judge described the evidence as too vague and speculative to support a finding. A judgment was entered enjoining the defendants from making, baking, and selling chocolate chip cookies which use the plaintiff's formula. On the basis of a finding that the defendants had violated G. L. c. 93A, §§ 2 and 11, the judge assessed against the defendants legal fees of $14,771.50 and disbursements of $1,740.38. A further judgment adverse to the defendants was entered on their counterclaim, which alleged various unfair practices by the plaintiff Kitchens. We affirm.

The judge's findings of fact, of course, shall not be set aside unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 675 (1977).

---

[3] Samples were served up as part of the record on appeal. The time consumed by the appellate process caused the cookies to be in a condition which rendered an appellate taste test of dubious utility, if not downright dangerous.

1. *Was there a trade secret?* No doubt, the basic ingredients, flour, sugar, shortening, chocolate chips, eggs, and salt, would be common to any chocolate chip cookie. The combination in which those ingredients are used, the diameter and thickness of the cookie, and the degree to which it is baked would, however, constitute a formula which its proprietor could protect from infringement by an employee who either gains access to the formula in confidence or by improper means. *Jet Spray Cooler, Inc.* v. *Crampton,* 361 Mass. 835, 840 (1972). *Eastern Marble Prods. Corp.* v. *Roman Marble, Inc.,* 372 Mass. 835, 838-839 (1977). *Jet Spray Cooler, Inc.* v. *Crampton,* 377 Mass. 159, 165-168 (1979). Restatement of Torts § 757 (1939).[4] In any event, the insertion of the nut dust into the mix served to add that modicum of originality which separates a process from the every day and so characterizes a trade secret. See *Cataphote Corp.* v. *Hudson,* 444 F.2d 1313, 1315-1316 (5th Cir. 1971). See also *Dynamics Research Corp.* v. *Analytic Sciences Corp.,* 9 Mass. App. Ct. 254, 267-268 (1980). Lawton Wolf's testimony that "sales took off immediately" supports a determination that the improved recipe had competitive value so far as Kitchens was concerned.

2. *Conduct of the defendants.* Once information qualifies as a trade secret, determination of whether the trade secret has been misused steers the inquiry to examining the conduct of the defendant, and the legal character of that conduct, in turn, is much affected by the steps taken by the proprietor of the trade secret to protect it. See *J. T. Healy & Son* v. *James A. Murphy & Son, Inc.,* 357 Mass. 728, 738-739 (1970); *USM Corp.* v. *Marson Fastener Corp.,* 379 Mass. 90, 97-104 (1979), and cases and authorities cited. Here, as we have seen, the holder of the secret took reasonable steps to maintain its mystery and to narrow the circle of those privy to its essentials. *USM Corp.* v. *Marson Fastener Corp., supra,* at 101-103. We do not think that the absence of admonitions about secrecy or the failure to emphasize secrecy in employment contracts (if there were any in this relatively small business) is fatal to the plaintiff. That Hogan brought no experience in volume baking to his employment with Kitchens and that he employed a ruse to examine the ingredients cards and may have helped himself to a look at the formula tucked away in Kitchens' safe or William Wolf's desk are relevant factors. See and compare *Dynamics Research Corp.* v. *Analytic Sciences Corp., supra* at 267-268. Listing of nut meal on the plaintiff's label does not constitue publication of the recipe because it discloses nothing about the proportions in which the ingredients are used, nor does it say what kind of nuts or what part of the nuts imparted special zing to Kitchens' cookies.

---

[4] The Restatement (Second) of Torts dropped the general topics of unfair competition and trade regulation, including the specific topic of trade secrets, because they were seen to be a discrete subject of study that should stand independent of a restatement of the law of torts. See Restatement (Second) of Torts, introductory note to Division Nine at 1-3 (1979).

3. *The length and breadth of the injunction.* The injunction against use of the plaintiff's recipe was permanent and without limit as to area. Injunctions of that length and breadth are unusual, but not without precedent. See *Analogic Corp.* v. *Data Translation, Inc.,* 371 Mass. 643, 647 (1976); *Eastern Marble Prods. Corp.* v. *Roman Marble, Inc.,* 372 Mass. at 842. We do not think the judge was bound to calibrate a more precise area and duration for an injunction as limited as the one imposed. It does not drive Hogan or Hogie Bear Snacks, Inc., out of the cookie business; the injunction forbids only use of Kitchens' precise formula. Other recipes — and the evidence included many — are available to Hogie Bear. There is no limitation on Hogie Bear's packaging or marketing methods. See also *Curtiss-Wright Corp.* v. *Edel-Brown Tool & Die Co.,* 381 Mass. 1, 10-11 (1980).

4. *Applicability of c. 93A.* Hogan argues that remedies under G. L. c. 93A, § 11, are not available because *Manning* v. *Zuckerman,* 388 Mass. 8, 11-15 (1983), made chapter 93A inapplicable to employee-employer disputes. Hogie Bear Snacks, Inc., of course, was never an employee of Kitchens. Moreover, Hogan's use of Kitchens' trade secret was made when he was no longer an employee of Kitchens. Hogan's argument crumbles.

*Judgments affirmed.*

*Sylvia Katsenes (William A. Katsenes* with her) for the defendants.
*Mitchell J. Sikora, Jr. (Harold Jacobi, III,* with him) for the plaintiff.